# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY, | ) ) ) ) ) | |
| 2014 Tulare Street, Suite 423 Fresno, CA 93721, | ) ) ) | Case No. 14-cv-1409 Hon. _____ |
| and | ) ) | |
| JEAN SAGOUSPE, | ) ) | |
| 259 I Street Los Banos, CA 93635, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THE NATIONAL PARK SERVICE, an agency of the United States government; SALLY JEWEL, in her official capacity as Secretary of the Interior, RACHEL JACOBSON, in her official capacity as Assistant Secretary for Parks and Wildlife, Department of the Interior, JONATHAN B. JARVIS, in his official capacity as Director, National Park Service, Department of the Interior, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Department of the Interior 1849 C Street NW Washington, DC 20240, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

One of the most environmentally controversial projects in United States history, the Hetch-Hetchy Project, dams the Tuolumne River, a wild and scenic river originating within Yosemite National Park, to divert an average 265,000 acre-feet of river flows into a pipeline that transports the water from its natural basin to San Francisco, 167 miles away.  Though the natural flows of the Tuolumne River are essential to maintaining the downstream habitat of several federally listed endangered and threatened fish species, the federal government agency entrusted with regulatory authority over the Hetch-Hetchy Project, the National Park Service, has never complied with the requirements of the federal Endangered Species Act ("ESA")[1] or the National Environmental Policy Act ("NEPA").[2]

Although Plaintiffs, the Center for Environmental Science, Accuracy & Reliability ("CESAR") and Jean Sagouspe, provided Defendants a detailed statement of these failures to comply with their legal obligations by letter dated April 18, 2014 (Exhibit A), Defendants never responded nor did they comply with their legal obligations.  Plaintiffs therefore ask this Court to require these federal agencies to comply with their statutorily required duties set forth in the federal Endangered Species Act[3] and NEPA,[4] and to protect endangered species and the environment against the avoidable adverse impacts of their ongoing discretionary actions.

---

[1] 16 U.S.C. §§ 1531–1544.
[2] 42 U.S.C. §§ 43214–4335.
[3] 16 U.S.C. §§ 1531–1544.
[4] 42 U.S.C. §§ 43214–4335.

**Parties**

1.      Plaintiff the Center for Environmental Science, Accuracy & Reliability, or CESAR, is a nonprofit California corporation whose mission is to bring scientific rigor to regulatory decisions undertaken pursuant to environmental statutes and to ensure consistent application of these statutes throughout all industries and all sectors.  This mission includes ensuring efficient and effective enforcement of the Endangered Species Act, in addition to fulfilling the educational goals of its members and providing educational information on the ESA and its application to the general public in the process.

2.      Plaintiff, Jean Sagouspe, is a member of CESAR and profoundly interested in the application of environmental law, recovery, and protection of species and the aesthetic and scientific study of the listed species of salmon, smelt and sturgeon that inhabit the San Joaquin River and Sacramento Delta as well as the furtherance of their conservation.  Sagouspe is also the owner of farmland in California's Central Valley that receives its irrigation water from the Central Valley Project and contributes to the conservation of species found on his lands through support of habitat conservation efforts.  Sagouspe's economic interests are directly affected by the availability of Central Valley Project irrigation water which is, in turn, determined by viability of threatened and endangered species which rely on the availability of fresh water to maintain their habitat in the Tuolumne and San Joaquin Rivers and the Sacramento Delta.

3.      Defendant, the National Park Service, is an agency of the U.S. Department of the Interior tasked with managing the 401 parks of the National Park System, and to

2

administer dozens of affiliated site, the National Register of Historic Places, National Wild and Scenic Rivers, National Historic Landmarks, and National Trails.  NPS is specifically charged with management and regulation of Yosemite National Park in California.

4.      Defendant, Sally Jewell, is the Secretary of the United States Department of the Interior.  Jewell is sued in her official capacity as the officer of the United States charged with overall responsibility for regulating the Hetch-Hetchy Project as well as proper implementation of the Endangered Species Act.

5.      Defendant, Rachel Jacobson, is the Assistant Secretary for Fish, Wildlife, and Parks of the United States Department of the Interior.  Jackson is sued in her official capacity as the Interior Department official most directly responsible for both the administration of the National Parks, including Yosemite National Park where the Hetch-Hetchy Project is located, as well as the administration of the federal Endangered Species Act.

6.      Defendant, Jonathan B. Jarvis, is the Director of the National Park Service, an agency of the United States Department of the Interior.  Jarvis is sued in his official capacity as the person authorized and required by law to manage and regulate the use of the National Parks, including Yosemite National Park where the Hetch-Hetchy Project is located, in conformity with laws that include the federal Endangered Species Act.

**Jurisdiction and Venue**

7.      This Court has jurisdiction of this case under the Endangered Species Act

jurisdictional statute;[5] the ESA citizen suit provision;[6] the federal question jurisdictional statute;[7] the Administrative Procedure Act;[8] and the Declaratory Judgment Act.[9]

8.     Venue for this action is proper in the District of Columbia under 28 U.S.C. § 1391(e), as a civil action against three officers of the United States, acting in their official capacities, brought in the district court for the district in which they reside.

**Statutory and Regulatory Framework**

9.     The federal Endangered Species Act requires that each federal agency, including the National Park Service, consult with the Secretary to "insure that any action authorized, funded, or carried out by such agency is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species."[10]  The requirement for consultation is clarified in 50 C.F.R. § 402.14 to include any action which "may affect" a listed species or its critical habitat.

10.     In addition, it is unlawful for any person, including the National Park Service, to "take any such species . . . ."[11]  The statute defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any

---

[5] 16 U.S.C. § 1540(c).
[6] 16 U.S.C. § 1540(g).
[7] 28 U.S.C. § 1331.
[8] 5 U.S.C. § 702.
[9] 28 U.S.C. § 2201.
[10] 16 U.S.C. § 1536(a)(2).
[11] 16 U.S.C. § 1538(a)(1).

such conduct."[12]  The definition of harm includes sufficient modification or degradation of habitat to significantly impair essential behavioral patterns.  The flow reductions in the Tuolumne and San Joaquin Rivers and the Sacramento-San Joaquin Delta which result from the operation of the O'Shaunessy Dam are sufficient to significantly modify and degrade these listed species' habitat and critical habitat.

11.    The National Environmental Policy Act requires that the National Park Service prepare an environmental impact study for "every . . . major federal action significantly affecting the quality of the human environment . . . ."[13]

**Statement of Facts**

### The listed species

12.    The delta smelt (*Hypomesus transpacificus* ) is a small, two-to-three inch species of fish endemic to the San Francisco Bay/Sacramento–San Joaquin Delta Estuary. Once an abundant species in the Bay–Delta ecosystem, the delta smelt is now in imminent danger of extinction.  In March 1993 the Fish and Wildlife Service listed the species as threatened under the provisions of the ESA, and the FWS designated the Bay–Delta system a critical habitat for the delta smelt in 1994.  Yet, over the past decade, the delta smelt population has been decimated even relative to these depleted levels, with a measured decline since 2000 of up to three orders of magnitude below historic lows.  As a consequence, the FWS announced in 2010 that reclassifying the delta smelt from a threatened to an endangered species was warranted (but precluded by higher priority

---

[12] 16 U.S.C. § 1532(19).
[13] 42 U.S.C. § 4332(2)(c).

listings).

13.     The Sacramento Delta is also critical habitat for a number of salmonid
species, including the Central Valley Steelhead (*Oncorhynchus mykiss*), the Central
Valley Spring-Run Chinook Salmon (*Oncorhynchus tshawytscha*), and the Winter-Run
Chinook Salmon (*Oncorhynchus tshawytscha*), which the Fish and Wildlife Service has
listed as endangered under the ESA.  These species depend on stream flows, including
the flows of the Tuolumne and San Joaquin rivers, for upstream and downstream
migration.  The National Marine Fisheries Service, which has jurisdiction over these
anadromous species under the Endangered Species Act, has required substantial releases
of water from Central Valley Project and State Water Project reservoirs—but not from
Hetch-Hetchy—to provide adequate flows to support the life cycles of these salmonid
species.

14.     The Green Sturgeon (*Acipenser medirostris*) is also listed as threatened
under the ESA.  The Green Sturgeon is a long-lived, slow-growing fish, and is the most
marine oriented of the sturgeon species.  Mature males range in size from 4.5 to 6.5 feet,
and do not mature until they are 15 years old; mature females range in size from 5 to 7
feet, and do not mature until they are 17 years old.  The Green Sturgeon have survived
practically unchanged for almost 200 million years, but are on the brink of extinction
from overharvesting and rapid habitat change.  As a result, in 2006 the Fish and Wildlife
Service listed the Green Sturgeon as threatened under the ESA.  The Sacramento River is
one of only three river systems in North America where the Green Sturgeon spawns.  The
Green Sturgeon is currently threatened by reduced water flow rates, impassable barriers,

6

and loss of historical habitat in the Sacramento River system.  The Fish and Wildlife Service has required that both the federal Central Valley Project and State Water project—but not Hetch-Hetchy—be operated to minimize impact on the Green Sturgeon.

**The Hetch-Hetchy Project diverts fresh water needed by the listed species**

15.     The waters of the Tuolumne River originate as snowmelt in Yosemite National Park, then flow generally westward 149 miles through the foothills of the Sierra Nevada Mountains until they join the San Joaquin River near Modesto, California.  They then flow generally northward about 50 miles until they empty into the Sacramento Delta. Congress has designated 84 miles of the Tuolumne River as wild and scenic under the Wild and Scenic Rivers Act.[14]



16.     But the natural flow of the Tuolumne River is interrupted by the Hetch-

---

[14] *See* Tuolumne Wild and Scenic River Comprehensive Management Plan and Tuolumne Meadows Concept Plan, Yosemite National Park; Madera, Mariposa, Mono and Tuolumne Counties, California; Notice of Intent To Prepare an Environmental Impact Statement, 71 Fed. Reg. 38,899 at 38,900 (July 10, 2006) (discussing history of protections for Tuolumne River).

Hetchy Project, which is located within Yosemite National Park and so regulated by the

National Park Service.  The centerpiece of the Hetch-Hetchy Project is the

O'Shaughnessy dam, which blocks the Tuolumne River and floods the Hetch-Hetchy

Valley, creating an eight-mile-long reservoir holding 117 billion gallons of water.

Through the facilities of the Hetch-Hetchy Project the City of San Francisco diverts about

265,000 acre-feet per year—about 15 percent of its natural flow—out of the Tuolumne

River and channels it into a 167-mile-long aqueduct that traverses California's Central

Valley removing this pristine water from the hydrologic basin and delivering it instead to

San Francisco and other Bay Area communities.

17.    These diversions of fresh water out of the Tuolumne River jeopardize the

continued existence of the listed species of salmon, smelt and sturgeon by increasing the

salinity of the San Joaquin River and Sacramento Delta, into which they would naturally

flow if not diverted at Hetch-Hetchy.  As the Ninth Circuit Court of Appeals recently

stated, "As more water is diverted from the rivers that feed the Delta . . . the salinity of

the Delta and its estuaries increases along with the threat to the species that thrive

there."[15]  The operation of the Hetch-Hetchy Reservoir permanently diverts water from

the Tuolumne River, the San Joaquin River, and the Sacramento-San Joaquin Delta.

18.    Although the United States Fish and Wildlife Service and National Marine

Fisheries Service have, as a result of consultations held in compliance with the

Endangered Species Act, required severe cutbacks in the diversions of water allowed for

---

[15] *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 595 (9th Cir. 2014).

the federal Central Valley Project and the California State Water Project to provide

instream flows and reduce salinity in the San Joaquin River and Sacramento Delta for the

endangered and threatened fish species, these same federal agencies have required no

such cutbacks for Hetch-Hetchy Project diversions because Defendants have never

initiated the statutorily required ESA consultations.

19.    On April 18, 2014 Plaintiffs sent Defendants a detailed statement of their

claim and a notice, as required by Section 11(g) of the Endangered Species Act, that they

intended to file suit to compel such statutory compliance.  A copy of this sixty-day notice

letter is attached as Exhibit A.  Defendants did not respond to Plaintiffs' notice letter, nor

have they complied with their statutory obligations under the Endangered Species Act.

**First Claim for Relief**

**To Require NPS to Consult Regarding Jeopardy
to Endangered and Threatened Fish Species**

20.    Defendant, National Park Service, annually approves instream flow and

other operating requirements for the Hetch-Hetchy Project.  But in approving these in-

stream flows and other operating requirements, including for the current water year,

2014, Defendants have failed to consult with the Fish and Wildlife Service or the

National Marine Fisheries Service, as required by Section 7 of the Endangered Species

Act to ensure that these operations of the Hetch-Hetchy Project are "not likely to

jeopardize the continued existence of any endangered species or threatened species or

result in the destruction or adverse modification of habitat of such species."[16]  At a

---

[16] 16 U.S.C. § 1536(a)(2).

minimum these annual approvals "may affect" listed species which also require formal consultation under the implementing regulations of the ESA.

21.     A present controversy exists between Plaintiffs and Defendants regarding Defendants' statutory obligation to consult under the ESA regarding the annual instream flow and other operating requirements for the Hetch-Hetchy Project.  Plaintiffs contend that Section 7 of the Endangered Species Act[17] requires Defendant, the National Park Service, to consult with the Secretary to ensure that these operations of the Hetch-Hetchy Project are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species,"[18] while Defendants contend that they are not required to consult.  This controversy will continue until and unless this Court declares the rights and obligations of the respective parties.

22.     As a result, Plaintiffs are suffering, and will continue to suffer, grave and irreparable injury to their educational, aesthetic, and scientific interest in the listed species and to their economic interests by reason of cutbacks in their irrigation water resulting from the adverse effects of NPS-approved Tuolumne River water diversions on the habitat and ultimate conservation status of these endangered species.  This irreparable injury will continue until and unless NPS is enjoined by this Court from approving Hetch-Hetchy instream flow requirements without complying with the consultation provisions of the federal Endangered Species Act.

---

[17] 16 U.S.C. § 1536.
[18] 16 U.S.C. § 1536(a)(2).

**Second Claim for Relief**

**To Prohibit the Take of Endangered and Threatened Species**

23.    In addition, by authorizing the diversion of water out of the Tuolumne River that is badly needed to maintain the habitat of the endangered and threatened salmon, smelt, and sturgeon, Defendants have caused, and continue to cause, a take of these threatened and endangered species in violation of Section 9 of the federal Endangered Species Act.

24.    A present controversy exists between Plaintiffs and Defendants regarding Defendants' statutory obligation to avoid the take of endangered or threatened species or destruction of their critical habitat under the ESA in prescribing the annual instream flow and other operating requirements for the Hetch-Hetchy Project.  Plaintiffs contend that Section 9 of the Endangered Species Act[19] prohibits this take, while Defendants contend that it does not.  This controversy has persisted for several years and will continue until and unless this Court declares the rights and obligations of the respective parties.

25.    As a result, Plaintiffs are suffering, and will continue to suffer, grave and irreparable injury to their educational, aesthetic, and scientific interest in the listed species and to their economic interests by reason of cutbacks in their irrigation water resulting from the adverse effects of NPS-approved Tuolumne River water diversions on the habitat of these endangered species.  This irreparable injury will continue until and unless the Secretary and NPS are enjoined by this Court from allowing the Hetch-Hetchy

---

[19] 16 U.S.C. 1538.

instream flow and other operating requirements without complying with the consultation provisions of the federal Endangered Species Act.

**Third Claim for Relief**

**To Require Preparation of an Environmental Impact Study**

26.     Defendants' decision to prescribe instream flows and other operating requirements for the Hetch-Hetchy Project is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law because, in making this decision, Defendants made no effort to comply with the NEPA requirement that requires federal agencies to examine the environmental effects of proposed federal actions and to inform the public of the environmental concerns that went into the agency's decision-making.[20]  Specifically, NEPA requires, "to the fullest extent possible," all agencies of the federal government to prepare environmental impact statements for all "major Federal actions significantly affecting the quality of the human environment."[21]

27.     A present controversy exists between Plaintiffs and Defendants regarding Defendants' statutory obligation to prepare an environmental impact study before prescribing the annual instream flow and other operating requirements for the Hetch-Hetchy Project.  Plaintiffs contend that the National Environmental Policy Act[22] requires the preparation of an environmental impact statement, while Defendants contend that it

---

[20] *See* 76 Fed. Reg. at 31,728; 77 Fed. Reg. at 12,551.

[21] 42 U.S.C. § 4332.

[22] 42 U.S.C. §§ 43214–4335.

does not.  This controversy has persisted for several years and will continue until and unless this Court declares the rights and obligations of the respective parties.

28.     As a result, Plaintiffs are suffering, and will continue to suffer, grave and irreparable injury to their educational, aesthetic, and scientific interest in the listed species and to their economic interests by reason of cutbacks in their irrigation water resulting from the adverse effects of NPS-approved Tuolumne River water diversions on the habitat of these endangered species.  This irreparable injury will continue until and unless NPS is enjoined by this Court from approving Hetch-Hetchy instream flow and other operating requirements without complying with the National Environmental Policy Act.

**Prayer for Relief**

Therefore, Plaintiffs pray for relief as follows:

1.     On their First Claim for Relief, an order declaring that Defendant, National Park Service, is required to consult under Section 7 of the Endangered Species Act regarding the annual instream flow and other operating requirements for the Hetch-Hetchy Project, and an injunction prohibiting Defendants from diverting out of the Tuolumne River until they have completed such consultation;

2.     On their Second Claim for Relief, an order declaring that Defendants' authorization of Hetch-Hetchy Project diversions from the Tuolumne River constitutes a take of the endangered and threatened salmon, smelt, and sturgeon prohibited by Section 9 of the Endangered Species Act, and an order prohibiting the diversions to the extent they are causing a take;

3.     On their Third Claim for Relief, an order declaring that Defendants'
decision prescribing instream flows and other operating requirements for the Hetch-
Hetchy Project for water year 2014 is arbitrary, capricious and contrary to law for failure
to prepare an environmental impact study as required by the National Environmental
Policy Act, and enjoining such operations until Defendants comply with NEPA;

4.     Costs and a reasonable attorneys' fee for bringing this action;

5.     Such other and further relief as this Court may deem just.


                                   Respectfully submitted,

                                    /s/  Roger J. Marzulla
                                   Roger J. Marzulla,
                                        D.C. Bar No. 394907
                                   Nancie G. Marzulla,
                                        D.C. Bar No. 400985
                                   MARZULLA LAW, LLC
                                   1150 Connecticut Avenue, NW
                                   Suite 1050
                                   Washington, DC  20036
                                   (202) 822-6760
                                   (202) 822-6774 (facsimile)
                                   nancie@marzulla.com
                                   roger@marzulla.com

August 18, 2014                    Counsel for Plaintiffs

14